1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Cynthia Williams,                    )    No. CV-09-1511-PHX-LOA
                                          )
10             Plaintiff,                  )    **ORDER**
                                          )
11   vs.                                   )
                                          )
12                                         )
     City of Mesa, a municipal corporation; )
13   John Santiago, individually, and in his )
     capacity as a Mesa Police Officer,    )
14                                         )
               Defendants.                 )
15   _____)

16          This matter arises on the Motion for Summary Judgment by Defendants City

17   of Mesa ("City") and Mesa Police Officer John Santiago (collectively "Defendants"). (Doc.

18   37) Defendants argue that because the record lacks sufficient evidence to support Plaintiff's

19   claims, summary judgment is appropriate on all claims. (*Id.* at 1)

20          After review of the briefing, including Plaintiff Cynthia Williams' ("Plaintiff")

21   second Response in opposition to the Motion, doc. 50[1]; the Defendants' Reply, doc. 47; the

22   parties' Statements of Facts, including their Controverting Statement of Facts, docs. 45-46,

23

24          [1]   On January 19, 2011, the Court struck Plaintiff's Response without prejudice for
25   violations of the District Court's Local Rules pursuant to its inherent authority. *Ready
     Transportation, Inc., v. AAR Manufacturing, Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (court's
26   inherent authority "includes the power to strike items from the docket as a sanction for
27   litigation conduct.") Plaintiff timely re-filed her Response but the Court will consider only
     Plaintiff's arguments and authorities on her excessive force and state law claims. (Docs. 49,
28   51, 56)

the Court concludes that disputed questions of fact exist for jury resolution on Plaintiff's claims for alleged use of excessive force (Count I), negligence (Count III), negligence *per se* (Count IV), and punitive damages on her excessive force claim against Officer Santiago in his individual capacity (Count VIII). Summary judgment is granted on Plaintiff's claims of assault and battery (Count II), negligent supervision and training (Counts VI and VII), and punitive damages against the City, Officer Santiago in his official capacity, and Plaintiff's state law claims (Count VIII).

**I. Introduction**

Plaintiff commenced this § 1983 action on April 24, 2009, in the Maricopa County Superior Court, State of Arizona.  (Doc. 1-4, Exhibit ("Exh") 2 at 5-13)   On July 22, 2009, the City Defendants and the Mesa Police Department[2] removed the case to this District Court. (Doc. 1)   Federal subject-matter jurisdiction is predicated upon 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction exists over Plaintiff's state law claims pursuant 28 U.S.C. § 1367(a).  Upon the voluntary consent of all parties, docs. 6, 12, this matter is before the undersigned Magistrate Judge for all purposes including entry of final judgment. 28 U.S.C. § 636(c).

**II. Background**

In the Complaint, Plaintiff alleges violations of her civil rights under the Fourth Amendment of United States Constitution (Count I: excessive use of force) pursuant to 42 U.S.C. § 1983 based on a traffic stop and subsequent arrest by Mesa police on April 26, 2008.  Specifically, the Complaint alleges that, *inter alia*, Officer John Santiago "grabbed Plaintiff and violently slammed her against the Mesa Police patrol vehicle [and] then aggressively and violently grabbed Plaintiff's right arm and began excessively twisting her arm." (Doc. 1-4, ¶ 17 at 7)  Plaintiff sustained a serious injury to

---

[2]   Defendant Mesa Police Department was dismissed as a party on August 18, 2009 because it is not a jural entity subject to suit. (Doc. 8)

her right arm during the course of her arrest.[3]  Plaintiff also alleges several state-law claims: assault and battery (Count II), negligence (Count III), negligence *per se* (Count IV), negligent infliction of emotional distress (Count V),[4] negligent supervision (Count VI) and negligent training (Count VII). (*Id*. at 5-13)  Plaintiff seeks compensatory and punitive damages, attorneys' fees, litigation costs including expert and non-expert witness fees, and such other relief as the Court may deem just and proper. (*Id*. at 12)

**III.  Facts**

Up until the time of Plaintiff's arrest, the parties generally do not dispute the material facts. Because this matter arises on Defendants' Motion for Summary Judgment, the Court views the facts in the light most favorable to Plaintiff. *Adams v. Speers*, 473 F.3d 989, 990-91 (9th Cir. 2007).

At 1:00 a.m. on April 26, 2008, Mesa Police Officer Joseph Panagakis observed Plaintiff driving at an excessive speed (65 m.p.h.[5]) in the center lane (left turn only) westbound on University Drive near Higley in Mesa, Arizona. (Defendants' Statement of Facts ("DSOF"), ¶ 1 at 1; doc. 38)  When he pulled Plaintiff over and approached her vehicle, Officer Panagakis observed she was wearing only a shear negligee and matching thong, "frantically crying." (Plaintiff's Statement of Facts ("PSOF"), ¶ 1 at 5-6, doc. 45; Exhibit ("Exh") A at 27, 108-110)  Plaintiff indicates she snuck out of her boyfriend Sam's house in a rush to go to her home to avoid an argument and confrontation with him. (PSOF, ¶ 1 at 5-6)  Plaintiff immediately admitted to Officer Panagakis,

---

[3]  Plaintiff sustained a spiral fracture to her right humerus a few inches above her elbow, requiring open reduction and internal fixation. (PSOF, ¶ 29, doc. 45 at 9; DSOF, ¶ 37)

[4]  On February 14, 2011, the parties stipulated to the dismissal with prejudice of Plaintiff's claim for negligent infliction of emotional distress. (Docs. 56, 58)

[5]  Plaintiff testified in her deposition that she was driving at the posted speed limit. (Plaintiff's depo, Exh A, at 116; doc. 45 at 116)  In his deposition, Officer Panagakis testified that when he pulled her over, Plaintiff admitted to him she was speeding. (Officer Panagakis's depo, Exh 1, at 28, doc. 38-2 at 5)

1  who was familiar with Plaintiff from prior police contact, that she was driving on a

2  suspended license. (DSOF, ¶¶ 2, 4-6)  Because Plaintiff was embarrassed about her attire,

3  Officer Panagakis instructed Plaintiff to remain in her car while he returned to his police

4  vehicle to run a computer check on her. The computer check confirmed Plaintiff's driving

5  privilege was suspended. (DSOF, ¶¶ 7-8; Exh 1 at 28)  After verifying her driving

6  privilege was suspended, Officer Panagakis radioed for backup Mesa police officers to

7  assist him in conducting an inventory of the contents of Plaintiff's vehicle, calling a tow

8  truck and impounding her vehicle.[6]  (DSOF, ¶¶ 9-10)  Pursuant to the Mesa Police

9  Department's policy, Mesa officers conduct an inventory search of a vehicle before

10 having it towed. (DSOF ¶ 17)

11         To assist Officer Panagakis with the impound process, Mesa Officers John

12 Santiago, Travis Rowland and Edwin Nickerson arrived at the scene. (DSOF ¶ 11, PSOF

13 ¶ 9)  Upon their arrival, and although Plaintiff denies she was angry, the officers observed

14 Plaintiff shouting into a cell phone, banging her head and hands on the steering wheel,

15 stomping her feet, and thrashing back and forth in her car seat. (DSOF ¶ 12, PSOF ¶ 8)

16 While Officer Nickerson was conducting the inventory of Plaintiff's vehicle, he

17 discovered a home-made crack pipe with the tip wrapped in burnt aluminum foil in the

18 front center console.[7] (DSOF ¶ 21)  Plaintiff denies the crack pipe was hers. (PSOF ¶ 34)

19 ───────────────

20     [6]  Officer Panagakis was required to "cause the removal and either immobilization

21 or impoundment" of Plaintiff's vehicle for thirty days since he determined that Plaintiff was
   driving a vehicle while her "driving privilege [was] suspended[.]" Arizona Revised Statutes

22 ("A.R.S.") § 28-3511(A)(1), (E) (2008); *State v. Organ*, 225 Ariz. 43, 234 P.3d
   611(Az.Ct.App. 2010); *Salazar v. City of Maywood*, ___ F.3d ___, 2011 WL 477686 (9th Cir.

23 2011) (city statute, which provides for notice and an opportunity to be heard, permitting
   impoundment of vehicles for up to thirty days does not violate vehicle owners' constitutional

24 rights when an individual is found to be driving on a suspended or revoked license or without

25 ever having been issued a driver's license.)

26     [7]  "[A]lthough crack and powder cocaine are different forms of the same drug, the

27 routes of administration, their physiological and psychological effects, and the manner in
   which they are sold set the two forms of the drug apart. Crack is normally smoked in a glass

28 pipe, while powder cocaine is most often ingested nasally. Because it is smoked, crack has

Before the crack pipe was discovered, Officer Santiago approached Plaintiff, still seated in her vehicle, allowed her to finish putting on her slacks laying on the passenger's seat,[8] and escorted her to a nearby sidewalk. (DSOF ¶ 13-15)  While on the sidewalk approximately 20 to 30 feet from her vehicle, Plaintiff asked if she could have her purse and cell phone she had left in the vehicle so she could call her boyfriend. (PSOF ¶13-14; Plaintiff's depo, Exh A, at 131)  At this time, Officers Nickerson and Rowland were beginning their inventory of her vehicle.

In her deposition, Plaintiff testified, "I kept asking for my phone. They were over there searching my car, and I said, 'Well, can I just get my phone,' . . . because I want to call [my boyfriend] before the tow truck comes to get my car. They just kept saying, 'Wait. Wait a minute. Wait a minute.'" (Plaintiff's depo, Exh A, at 105; doc. 45 at 105)  Plaintiff claims she took one or two steps towards her car to retrieve her phone, at least, 20 feet away when one of the officers said "stop" or "stay still." (PSOF ¶ 14, 16; Plaintiff's depo, Exh A, at 125-126)  Plaintiff admits that Officer Panagakis told her twice not to go back to her car. However, she denies she was told three or more times not to go to her vehicle and denies she was told if she tried to go to her vehicle again, she would be arrested. (PSOF, ¶ 16; Plaintiff's depo, Exh A, at 123, 126-127)

Fifty years of age at the time, about 5 feet 2 inches tall, and weighing only 115 pounds or so, Plaintiff claims that without any warning, Officer Santiago, a former

---

a quicker and more intense effect on the brain than powder cocaine ingested nasally, causing a greater desire for more. Crack is also sold in smaller quantities and lower unit prices than powder cocaine, thereby reducing the financial barrier which had previously limited cocaine usage." *United States v. Harding*, 971 F.2d 410, 413 (9th Cir. 1992) (footnote omitted). As footnote 3 indicates, most cocaine users will smoke crack while few are willing to inject cocaine into their arms. *Id.*

This information is offered for background purposes only and is immaterial to this summary judgment motion because Plaintiff was neither arrested nor charged with Possession of Drug Paraphernalia, a Class 6 felony and punishable by a sentence of 6 months to 1.5 years in prison under Arizona law. A.R.S. §§ 13-3415(A), 13-702(A), (D).

[8]  At some time before her arrest, Plaintiff also put on a jacket.

1   Navy serviceman trained in hand-to-hand combat, standing about 6 feet 3 inches, and

2   weighing 250 pounds, grabbed Plaintiff by the right arm and fractured it in the process of

3   placing her hands in handcuffs behind her back. (PSOF ¶¶ 19, 43, 48-49; Plaintiff's depo,

4   Exh A, at 125-126)  "[H]e just ripped, popped my arm, and threw it behind my back. It

5   was never - it was like without warning." (Plaintiff's depo, Exh A, at 127, 140)  Plaintiff

6   claims Officer Santiago grabbed her at the elbow, "had me in some kind of hold," and "he

7   hit my elbow with his hand." (*Id*. at 134-135; DSOF, ¶ 39[9])

8          Plaintiff denies she struggled with Officer Santiago, denies Officer

9   Panagakis touched her or was even on the sidewalk when Officer Santiago broke her arm,

10  denies she tried to get away from Officer Santiago, and claims she was only reacting to

11  him hurting her by trying to move her body to a position that relieved the pain. (Plaintiff's

12  depo, Exh A, at 133, 134, 140)  After breaking her arm, Plaintiff claims Officer Santiago

13  immediately twisted her arm around her back and put on the handcuffs. She testified she

14  immediately screamed, "My arm, my arm."  Officer Santiago asked, "Are you hurt?"

15  Plaintiff responded, "Yes, [m]y arm, my arm." Officer Santiago then removed the

16  handcuffs and asked her if she wanted him to call an ambulance. She said, "Yes." (*Id*. at

17  142)  An ambulance arrived shortly thereafter and eventually transported Plaintiff to a

18  local hospital. (PSOF, ¶ 27)

19          Plaintiff was never cited for a traffic violation nor charged with a crime

20  arising out of the events of April 26, 2008.  (PSOF, ¶ 38)  Plaintiff denies, and there is no

21  non-opinion evidence to dispute, that Plaintiff consumed alcohol or used or possessed

22  illicit drugs before she was stopped by Officer Panagakis. (*Id*., ¶¶ 31-33, 37)  Defendants

23  admit that Plaintiff never assaulted or attempted to assault any of the police officers. (*Id*, ¶

24

25  _____

26      [9]   Defendants point out that Plaintiff testified that "[Officer Santiago] hit my elbow
    with his hand [and] [t]hat's what caused my arm to break." (DCSOF, ¶ 39, Plaintiff's depo,

27  Exh 3 at 135, doc. 38-4 at 12) Plaintiff's counsel, however, does not dispute that Plaintiff's
    own expert witnesses acknowledge that Plaintiff's arm was not broken because Officer

28  Santiago "hit her." (*Id*.)

1    40)

2           Defendants tell a much different story.  Defendants contend that Officer

3    Panagakis escorted Plaintiff to the sidewalk away from roadway traffic and began

4    explaining to her why he was citing her. As he did so, Plaintiff "wasn't paying attention

5    to what [he] was saying and she kept looking over at Officer Nickerson, who was starting

6    his inventory of [her] vehicle[.]" (Officer Panagakis' depo, Exh 1, at 29-30, doc. 38-2 at

7    7)  Plaintiff was "very agitated," "antsy," and said, "[W]hat's he doing in my car? There's

8    nothing in there. I have nothing. I need my purse [and] cell phone. And she kept going

9    toward the vehicle." (*Id.* at 30, PSOF, ¶ 18)  Officers Santiago and Panagakis were both

10   on the sidewalk with Plaintiff at this time. Officer Panagakis explained to her that Officer

11   Nickerson was inventorying her vehicle because it was being impounded and that she

12   needed to "[l]et us do our job." (*Id.*)

13          According to Defendants, the first time Plaintiff started to walk toward

14   Officer Nickerson and her car, Officer Panagakis told her to stop and placed himself

15   between Plaintiff and her vehicle to block her path but she "kept trying to go around

16   [him]." (*Id.*)  Three times, Defendants claim, Plaintiff was told to stay away from Officer

17   Nickerson and her vehicle, but she continued to try to walk towards Officer Nickerson,

18   saying that she needed her purse and phone. (*Id.*)

19          After Plaintiff's second or third attempt to go to her vehicle, and because

20   she refused to comply with his commands, Officer Panagakis grabbed her left arm and

21   wrist and again escorted her back to the sidewalk. (*Id.* at 30-31)  At this time, Officer

22   Panagakis told Plaintiff, "if you're going to keep this up, I will arrest you." (*Id.* at 31)

23   Nevertheless, Plaintiff again tried to go to her vehicle and this time, rather than citing and

24   releasing her as he had planned, Officer Panagakis arrested her because he "couldn't stop

25   her from continuing to interrupt on (sic) the inventory and then interrupting the traffic

26   stop." (*Id.* at 55)  When Officer Panagakis grabbed her left arm, Officer Santiago grabbed

27   her right arm. (*Id.* at 31)  Plaintiff immediately pulled away from Officer Panagakis'

28   grasp but Officer Santiago was able to hold on to her right arm and hand as he physically

1    escorted her over to Officer Panagakis' patrol car. (*Id.* at 31, 55; DSOF ¶¶ 22-24)  As he

2    had been trained to do, Officer Santiago used an "O.C.C.S. lock hold"[10] on Plaintiff's

3    right hand and arm as Plaintiff fought to get loose. (DSOF ¶ 25; Officer Santiago's depo,

4    Exh 2 at 148, doc. 38-3 at 6)  Plaintiff began "flailing," "twisting," and  "spinning" "like

5    a "Tasmanian devil."  (Officer Panagakis' depo, Exh 1, at 31, 62)  The struggle continued

6    to the front of Officer Panagakis' patrol car where Officer Santiago pinned her between

7    the patrol car and himself with his leg while he held on to her right hand and arm.

8    (Officer Santiago's depo, Exh 2 at 148)  Plaintiff "continued to resist, she would go

9    down, come up, go down, come up and try to twist around her leg and fall." (*Id.*)  At this

10   time, Officer Santiago heard a "pop in her arm" but she continued resisting and fighting.

11   (*Id.* at 148-149)  Plaintiff did not immediately scream in pain or complain that she was

12   injured but later did so after she was placed in the police vehicle. (DSOF ¶¶ 25-27)  As

13   Plaintiff sat in the police vehicle, the officers heard her yell that her arm hurt so the

14   officers promptly assisted her from the patrol car, removed her handcuffs, and helped take

15   off her jacket. At that point, the two officers saw that her upper right arm was misshapen.

16   (PSOF, ¶¶ 31-33)  Officer Santiago then called the fire department for emergency medical

17   assistance and his supervisor to report the incident. Fire department paramedics treated

18   Plaintiff at the scene and she was transported by ambulance to Banner Gateway Hospital.

19   (*Id.*, ¶¶ 34-36)

20           Defendants' Reply argues that "[i]t is true that Plaintiff remembers some

21   details differently than do the officers, but these details are not material to the motion for

22

23

---

24       [10]  Officer Santiago described an O'Donnell Continuous Control System ("O.C.C.S.")
     lock hold as "a control hold." Generally, a police officer stands behind an arrestee and grasps
25   the arrestee's right hand with the officer's right hand and then the arrestee's right forearm
     between the wrist and elbow with the officer's left hand. The arrestee's right "arm is grabbed,
26   twisted and [is] rotated" behind the arrestee's back at which time the officer  places his
     handcuffs on the arrestee's right wrist. "[I]t's a technique which uses pain compliance,
27   depending on the person's tolerance." (Officer Santiago's depo, Exh C at 149-158, doc. 41-3
     at 50-52)
28

1  summary judgment. Both officers testified that Officer Panagakis grabbed Plaintiff's left

2  hand, but she pulled away from him three times. Plaintiff denies that Officer Panagakis

3  ever touched her. But Officer Panagakis is not a named defendant, and it is not necessary

4  in evaluating the propriety of Officer Santiago's actions to determine that Plaintiff was at

5  the same time pulling away from Officer Panagakis." (Doc. 47 at 3)  Defendants point out

6  the many inconsistencies in the testimony. "Officer Santiago testified that he was holding

7  the Plaintiff's arm when she thrashed forward and backward into him and that is when her

8  arm broke. Plaintiff has the burden of prooving (sic) that she suffered injury because of

9  excessive force by Officer Santiago. Here, Plaintiff does not have evidence that excessive

10  force was used instead she simply argues that she suffered injury."  The Court disagrees.

11  **IV.  Summary Judgment Standard**

12             A moving party may, at any time, move for summary judgment on all or

13  any part of a claim.  Fed.R.Civ.P. 56.  The Court may only grant summary judgment if the

14  pleadings and supporting documents, viewed in the light most favorable to the non-

15  moving party, determines that "there is no genuine issue of material fact and that the

16  moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Celotex*

17  *Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts

18  are material.  *Anderson v. Liberty Lobby, Inc*., 447 U.S. 242, 248 (1986). "Only disputes

19  over facts that might affect the outcome of the suit under the governing law will properly

20  preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  In considering the

21  evidence, the Court is not to weigh the evidence and determine the truth of the matter, but

22  to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  The

23  moving party need not disprove matters on which the opponent has the burden of proof at

24  trial.  *Celotex*, 477 U.S. at 323.

25             The party opposing summary judgment "may not rest upon the mere allega-

26  tions or denials of [the party's] pleadings, but . . . must set forth specific facts showing

27  that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Matsushita Elec. Industries*

28  *Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 685-87 (1986).  There is no genuine issue

1   for trial unless there is sufficient evidence favoring the non-moving party.  If the evidence

2   is merely colorable or is not significantly probative, summary judgment may be granted.

3   *Anderson*, 477 U.S. at 249-50.  However, "[t]he evidence of the non-movant is to be

4   believed, and all justifiable inferences are to be drawn in his [or her] favor."  *Id.* at 255.

5   Allegations of civil rights violations are to be liberally construed. *Thomas v. Youngblood*,

6   545 F.2d 1171, 1192 (9th Cir. 1976).

7          When considering a motion for summary judgment based on qualified

8   immunity, district "courts are required to view the facts and draw reasonable inferences

9   'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott*

10  *v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (citations omitted). "However,

11  when the facts, as alleged by the non-moving party, are unsupported by the record such

12  that no reasonable jury could believe them, we need not rely on those facts for purposes

13  of ruling on the summary judgment motion." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th

14  Cir. 2010) (citing *Scott*, 550 U.S. at 380); *City of Vernon v. Southern Cal. Edison Co.*,

15  955 F.2d 1361, 1369 (9th Cir. 1992), *cert. denied*, 506 U.S. 908 (1992) (a party cannot

16  defeat a summary judgment motion by producing a "mere scintilla of evidence to support

17  its case.").

18         The facts which establish a genuine issue of fact must be in *both* the district

19  court's file and set forth in the parties' briefings. *Carmen v. San Francisco Unified School*

20  *District*, 237 F.3d 1026, 1029 (9th Cir. 2001); Rule 56(c)(3), Fed.R.Civ.P.  The trial court

21              may determine whether there is a genuine issue of fact, on summary
             judgment, based on the papers submitted on the motion and such other
22           papers as may be on file and specifically referred to and facts therein set
             forth in the motion papers.  Though the court has discretion in appropriate
23           circumstances to consider other materials, it need not do so.  *The district*
             *court need not examine the entire file for evidence establishing a genuine*
24           *issue of fact, where the evidence is not set forth in the opposing papers with*
             *adequate references so that it could conveniently be found.*
25
    *Id.* at 1031 (emphasis added).
26
    **V. Traffic Stop**
27
           Temporary detention of individuals during a police automobile stop, even if
28

only for a brief period, constitutes a seizure within the meaning of the Fourth Amend-
ment. Thus, an automobile stop is subject to the constitutional requirement that the
seizure not be "unreasonable" under the circumstances. *Whren v. United States*, 517 U.S.
806, 809-10 (1996)).  Traffic stops are investigatory stops, which require only a showing
of reasonable suspicion, *i.e.*, whether under the totality of the circumstances, Officer
Panagakis had a reasonable suspicion that a traffic law violation occurred. *Arizona v.
Johnson*, ___ U.S.___, 129 S.Ct. 781, 784 (2009) (permitting a limited stop "when the
police officer reasonably suspects" a traffic violation); *United States v. Lopez- Soto*, 205
F.3d 1101, 1105 (9th Cir. 2000) ("[T]he Fourth Amendment requires only reasonable
suspicion in the context of traffic stops.").  Reasonable suspicion requires "specific,
articulable facts which, together with objective and reasonable inferences, form a basis
for suspecting that a particular person is engaged in criminal conduct." *United States v.
Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (internal quotations omitted).  Reasonable
suspicion is less than probable cause, but more than an "inchoate and unparticularized
suspicion or 'hunch.' " *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v.
Ohio*, 392 U.S. 1, 27 (1968)).

   Here, Plaintiff does not challenge whether Officer Panagakis had reason-
able suspicion to stop Plaintiff or whether probable cause existed to arrest her because of
her undisputed admission at the scene she was driving on a suspended license.

**VI. Qualified Immunity**

   The Fourth Amendment guarantees "[t]he right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and seizures."
U.S. Const., Amend. IV. It is clearly established that "[t]he use of excessive force by
police officers in an arrest violates the arrestee's Fourth Amendment right to be free from
an unreasonable seizure." *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). The
Ninth Circuit has held that a § 1983 claim may be based upon the Fourth Amendment if
the police used excessive force during an arrest.  *Robins v. Harum*, 773 F.2d 1004 (9th
Cir. 1985).

1    At the summary judgment stage in § 1983 actions where the plaintiff has

2    alleged a violation of the Fourth Amendment, the qualified immunity question is closely

3    related, though not identical, to the question on the merits: whether the plaintiff has raised

4    a triable issue regarding the constitutional violation. Defendants argue that they are

5    entitled to qualified immunity on Plaintiff's claim of use of excessive force. The Court

6    must determine, viewed in the light most favorable to Plaintiff, whether the facts alleged

7    show Officer Santiago's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S.

8    194, 201 (2001). Where the facts are disputed, their resolution and determinations of

9    credibility "are manifestly the province of the jury." *Santos v. Gates*, 287 F.3d 846, 852

10   (9th Cir. 2002).

11   Police officers and other state officials are entitled to qualified immunity

12   from section 1983 suits. *Davis v. Scherer*, 468 U.S. 183, 194 n. 12 (1984); *Wood v.*

13   *Ostrander*, 879 F.2d 583, 591 (9th Cir. 1989).  "Qualified immunity balances two

14   important interests - the need to hold public officials accountable when they exercise

15   power irresponsibly and the need to shield officials from harassment, distraction, and

16   liability when they perform their duties reasonably. The protection of qualified immunity

17   applies regardless of whether the [police officer's] error is a mistake of law, a mistake of

18   fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555

19   U.S. 223, ___, 129 S.Ct. 808, 815 (2009) (citation and internal quotation marks omitted).

20   In *Saucier*, *receded from by Pearson*, 129 S.Ct. at 815, the Supreme Court

21   instructed lower courts deciding summary judgment motions based on qualified immunity

22   to consider "this threshold question: Taken in light most favorable to the party asserting

23   the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

24   *Id*. at 201.  If not, then "there is no necessity for further inquiries concerning qualified

25   immunity." *Id*.  If so, then "the next, sequential step is to ask whether the right was

26   clearly established." *Id*.  A constitutional right is clearly established when, "on a

27   favorable view of the other parties' submissions[,]" "it would be clear to a reasonable

28   officer that his conduct was unlawful in the situation he confronted."  *Id*.

1    If the right is not clearly established, the individual public officials are

2  entitled to qualified immunity if a reasonable official could have believed that his or her

3  conduct was lawful.  *Thompson v. Souza*, 111 F.3d 694, 698 (9th Cir. 1997).  The Supreme

4  Court's 2009 decision in *Pearson* clarified that a district court is "permitted to exercise

5  [its] sound discretion in deciding which of the two prongs of the qualified immunity

6  analysis should be addressed first in light of the circumstances in the particular case at

7  hand." *Pearson*, 129 S.Ct. at 818.  The Court will consider the pending summary

8  judgment motion in view of the foregoing principles.

9    **A. Excessive Force**

10    Plaintiff claims that Officer Santiago used excessive force in effectuating

11  her arrest in violation of her rights under the Fourth Amendment. The Fourth Amendment

12  requires police officers to use only an amount of force that is objectively reasonable in

13  light of all the surrounding circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

14  In the Ninth Circuit, courts evaluate claims of excessive force under the objective

15  reasonableness standard. *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir.

16  1996).  "[T]he reasonableness inquiry in an excessive force case is an objective one: the

17  question is whether the officers' actions are 'objectively reasonable' in light of the facts

18  and circumstances confronting them, without regard to their underlying intent or

19  motivation." *Graham*, 490 U.S. at 397.  Trial courts must balance "the nature and quality

20  of the intrusion on the individual's Fourth Amendment interests against the

21  countervailing governmental interests at stake." *Id.* at 396 (internal citations omitted).

22  Assessing the "nature and quality" of a given "intrusion" requires the factfinder to

23  evaluate the "type and amount of force inflicted."  *Chew v. Gates*, 27 F.3d 1432, 1440 (9th

24  Cir. 1994).  The governmental interest is measured by considering: (1) the severity of the

25  crime at issue; (2) whether the suspect posed an immediate threat to the safety of the

26  officers or others; (3) whether the suspect was actively resisting arrest, and any other

27  exigent circumstances present at the time. *Graham*, 490 U.S. at 394; *Deorle v.*

28  *Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001).  Because this balancing "nearly always

1    requires a jury to sift through disputed factual contentions, and to draw inferences

2    therefrom, [the Ninth Circuit] has held on many occasions that summary judgment or

3    judgment as a matter of law in exces-sive force cases should be granted sparingly."

4    *Santos*, 287 F.3d at 853.

5              The Ninth Circuit has directed that the "inquiry is not limited to the specific

6    *Graham* factors, . . . [the court] must look to whatever specific factors may be appropriate

7    in a particular case, whether or not listed in *Graham*, and then must consider 'whether the

8    totality of the circumstances justifies a particular sort of seizure.' " *Franklin v. Foxworth*,

9    31 F.3d 873, 876 (9th Cir. 1994) (quoting *Graham*, 490 U.S. at 396); *Smith v. City of*

10   *Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)).

11             Analyzing the *Graham* factors in the light most favorable to Plaintiff, it is

12   undisputed that Plaintiff was driving on a suspended license, a minor, non-violent traffic

13   offense. "Traffic violations generally will not support the use of a significant level of

14   force." *Bryan v. MacPherson*, 630 F.3d 805, 828 (9th Cir. 2010) (citing *Deville v.*

15   *Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("Deville was stopped for a minor traffic

16   violation . . . making the need for force substantially lower than if she had been suspected

17   of a serious crime.")). There is no objective evidence that Plaintiff consumed alcohol or

18   used illicit drugs at the time, or within a reasonable time before, she was stopped by

19   Officer Panagakis. In fact, Officer Panagakis was planning to simply cite and release

20   Plaintiff but he changed his mind and decided to arrest her when she failed to follow his

21   instructions to stop trying to return to her vehicle.  The failure to comply with a police

22   officer's lawful order, however, is only a lower level misdemeanor under Arizona law[11]

23

24         [11]  Arizona criminalizes the failure to comply with a police officer's lawful order as
25   a Class 2 misdemeanor, carrying up to fours months in jail. *Bohnert v. Mitchell*, 2010 WL
     3767566, * 10 (D.Ariz. 2010) (quoting A.R.S. § 28-622(A) ("A person shall not wilfully fail
26   or refuse to comply with any lawful order or direction of a police officer invested by law with
     authority to direct, control or regulate traffic."). *See also*, *State v. Gonzalez*, 221 Ariz. 82, 84,
27   210 P.3d 1253, 1255 (Az.Ct.App. 2009) (the misdemeanor offense of Failure to Obey a
28   Police Officer pursuant to A.R.S. § 28-622 "requires proof that: (1) a person (2) wilfully (3)

1  and, without more, does not justify a significant level of force. This factor weighs in favor
2  Plaintiff.

3          The "most important" factor under *Graham* is whether the suspect posed
4  an "*immediate* threat to the safety of the officers or others." *Smith*, 394 F.3d at 702 (citing
5  *Chew*, 27 F.3d at 1441) (emphasis added). Defendants admit that Plaintiff never assaulted
6  or attempted to assault any of the police officers. There is no evidence that she posed any
7  danger, much less an immediate danger, to the safety of the officers or anyone else at the
8  scene. Because Plaintiff was dressed in a sheer negligee and thong when she was stopped,
9  it was obvious to the police officers that Plaintiff  was not concealing or carrying a
10  firearm or a dangerous instrument. While the officers were rightly concerned that Plaintiff
11  could have become a danger to the two officers while their attention was focused on
12  conducting the inventory, there were a total of four armed Mesa police officers at the
13  scene and the two officers conducting the inventory were, at least, 20 feet away from
14  Plaintiff who, according to Defendants, was between Officers Panagakis and Santiago
15  when she repeatedly asked for her purse and cell phone. There was very little, if anything,
16  Plaintiff could have done to harm the officers under the circumstances. There was no
17  apparent factual or legal reason why one of the officers could not have promptly retrieved
18  her two personal items from her car as she had requested numerous times. Because
19  Plaintiff denies the crack pipe was hers or, inferentially, that she knew it was in her
20  vehicle, and it is inappropriate at the summary judgment stage for the Court to speculate
21  that Plaintiff's real intent in returning to her car was to hide or destroy the crack pipe.
22  This *Graham* factor also weighs in favor Plaintiff.

23          The *Graham* factors of resistance to arrest and risk of flight also favor
24  Plaintiff. There is no evidence that Plaintiff fled or attempted to flee the scene before or
25  after Officer Panagakis pulled her over. Until after she had requested her purse and cell

26

27  failed or refused to comply with (4) any lawful order or direction (5) of a police officer
invested by law with authority to direct, control or regulate traffic.").

28

1  phone from her vehicle several times, Plaintiff was cooperative and complied with all of

2  the officers' instructions. Although she admits Officer Panagakis told her twice not to go

3  to her vehicle, Plaintiff denies she was so instructed more than that and denies she was

4  warned if she tried to go to her vehicle one more time, she would be arrested.  Plaintiff, a

5  petite, older woman, denies she struggled with the much larger Officer Santiago.  Clearly,

6  there is a genuine dispute of material fact whether Plaintiff struggled with Officer

7  Santiago. For summary judgment purposes, her testimony may be fairly described as

8  minimally or passively struggling after Officer Santiago, without warning, grabbed her

9  right arm and began hurting her with his forceful grip.  Plaintiff claims she was simply

10  trying to find a position to relieve the pain inflicted by Officer Santiago.

11          The amount of force used by Officer Santiago is another *Graham* factor to

12  consider. The reasonableness of the force used is determined by balancing the force

13  applied against the need for that force. *Deorle*, 272 F.3d at 1279. Here, the quantum of

14  force used was not as severe as the discharge of a firearm, Taser, or blow from a baton.

15  Nevertheless, Officer Santiago's O.C.C.S. hold on, or torque applied to, Plaintiff's arm

16  was forceful enough to audibly cause a serious spiral fracture to her upper arm (humerus).

17  According to Plaintiff's biomechanical expert, Joseph D. Peles, Ph.D, Officer Santiago

18  "deviated from [the O.C.C.S.] hold and produced excessive torque or internal rotation to

19  the humerus to cause [Plaintiff's] fracture. . . it's my conclusion he did more than . . . the

20  hold as he was taught or as the manual teaches." (PSOF, ¶ 54; Dr. Peles' depo, Exh F at

21  14, doc. 45-6 at 1)  Dr. Peles further opined that Plaintiff's fracture could not have been

22  caused by the movements of Plaintiff's body. (Dr. Peles' depo, Exh F at 16)  "[T]he only

23  way I can see that occur would be from the actions of Officer Santiago." (*Id*.)  Of course,

24  "[t]he issue[] of proximate causation . . . involve[s] application of law to fact, which is

25  left to the factfinder, subject to limited review." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S.

26  830, 840-841 (1996); *Laisure-Radke v. Par Pharmaceutical, Inc*., 426 F.Supp.2d 1163,

27  1173 (W.D.Wash. 2006) ("Cause in fact is usually a jury question.") (citation omitted).

28          The Ninth Circuit also permits a district court to consider the severity of the

injury as another factor to be considered in evaluating "whether the force used was reasonable in light of *all* the relevant circumstances." *Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) (*en banc*) (emphasis in original). "[I]f the extent of the injury to [plaintiff] is serious enough, a jury could conclude that [the officer] used force in excess of what was reasonable, even if [plaintiff] had been resisting at the time." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). Of course, when the circumstances show there is no need for force, any force used is constitutionally unreasonable. *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001). Here, Circuit Judge Beezer's wisdom expressed in his concurring and dissenting opinion in a recent Ninth Circuit excessive force case rings true:

> Although it is true that the officers did not use tasers, batons, or other weapons to subdue [plaintiff], that is not to say that the use of brute force and advantage in weight and size cannot be excessive. To say that would give officers a free pass as long as they just used their hands. The officers could always point to other weapons "they could have used." I do not mean to suggest that "no court may grant summary judgment on excessive force where the police officers are physically much larger than the suspect," Rather, I just think in light of the short time that [plaintiff] resisted, her minor crimes, the vast difference in size and weight, and [a witness'] corroborating testimony, that a reasonable jury could conclude that the officers used excessive force. In light of these facts, a reasonable jury could find that the officers used excessive force when they pulled [plaintiff's] arms around her back, when they used their body weight to keep her down even after she had been handcuffed, or when they left her "handcuffed [on the floor] so tight that it left scars.

*Luchtel v. Hagemann*, 623 F.3d 975, 988 (9th Cir. 2010)  Considering the facts in the light most favorable to Plaintiff, as the Court must, the Court concludes that a reasonable jury could find that Officer Santiago used an unreasonable amount of force under the circumstances of this case.

The Court is mindful that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Additionally, the Ninth Circuit has held that equally or more aggressive police conduct than used here was objectively reasonable, affirming summary judgment decisions in favor of police officers. *Tatum v. City and County of San Fran-*

1    *cisco*, 441 F.3d 1090, 1096 (9th Cir. 2006) (positioning plaintiff's arm behind his back in

2    a bar arm control, placing him against a wall and then forcing him to the ground was not

3    excessive force where the plaintiff ignored the officer's commands and spun around

4    partially escaping the officer's grasp, even though the plaintiff died from a cocaine over-

5    dose); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921-22 (9th Cir. 2001)

6    (twisting plaintiff's left arm behind her with enough force to lift her off the ground and

7    break her watch band while attempting to handcuff her was held to be reasonable where

8    the plaintiff refused to show transit identification upon request, refused to hand over purse

9    when warned that non-compliance would lead to arrest, stiffened her arm and attempted

10   to pull free when the officer grabbed her arm). These cases are factually distinguishable

11   from the case here when viewing the facts most favorable to Plaintiff.

12          At the summary judgment stage, "[c]redibility determinations, the weighing

13   of the evidence, and the drawing of legitimate inferences from the facts are jury functions,

14   not those of a judge." *Anderson*, 477 U.S. at 255; *Dominguez-Curry v. Nevada Transp.

15   Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005) ("The district court . . . improperly

16   dismissed Dominguez's allegations as consisting of nothing more than 'self-serving

17   statements in her own deposition and affidavit.' Such observations go to whether

18   Dominguez is credible, a determination that is exclusively within the province of the

19   factfinder at trial, not the district court on summary judgment[.]"). The Ninth Circuit has

20   repeatedly stated that whether the force used to arrest an individual is reasonable is

21   "ordinarily a question of fact for the jury." *Liston v. County of Riverside*, 120 F.3d 965,

22   976 n. 10 (9th Cir. 1997) (citing, among others, *Alexander v. County of Los Angeles*, 64

23   F.3d 1315, 1322 (9th Cir. 1995); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir.

24   1994)). When viewed in the light most favorable to the Plaintiff, no reasonable police

25   officer could believe that under these circumstances that the use of such force to badly

26   fracture Plaintiff's arm was justified. In this light, a reasonable jury could find Officer

27   Santiago violated Plaintiff's rights under the Fourth Amendment by using unreasonable

28   and unnecessary force in breaking her arm. Considering the severity and extent of the

force used, the *Graham* factors, and the availability of other means of avoiding or accomplishing the arrest, the question whether the force used here was reasonable is a matter that cannot be resolved in favor of Defendants on summary judgment.

### B. Clearly Established

Under the qualified immunity analysis, "[i]f a [Constitutional] violation could be made out on a favorable view of the party's submissions" the Court must ask the next question: whether the right was clearly established. *Saucier*, 533 U.S. at 201. Qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force[.]'" *Id.* at 206 (citation omitted). "Because the focus is on whether [Officer Santiago] had fair notice that [his] conduct was unlawful, reasonable-ness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that [Officer Santiago's] conduct would violate the Constitution, [he] should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) "Of course, in an obvious case, the[] standards [enunciated in *Graham*] can 'clearly establish' the answer, even without a body of relevant case law." *Id.*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. The Fourth Amendment prohibits a wide range of governmental intrusions on the person. "The Fourth Amend-ment's requirement that a seizure be reasonable prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and thud of a boot." *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001). Even "[t]he use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances." *Muehler v. Mena*, 544 U.S. 93, 102 (2005) (concurring opinion of Justice Kennedy citing *Graham*).

The right to be free from excessive force in handcuffing is clearly established in federal precedent. See, *e.g.*, *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (rejecting qualified immunity because it was "clearly established" that the

1   amount of force used in handcuffing the plaintiff was excessive); *Hansen v. Black*, 885

2   F.2d 642, 645 (9th Cir. 1989) ("[T]he officers used excess force on Hansen by unreason-

3   ably injuring her wrist and arm as they handcuffed her."). Like the Sixth Circuit

4   concluded in a similar case in *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167 (6th

5   Cir. 2004) (while arresting plaintiff, police officer pinned her against a wall with his

6   weight, his leg in between hers and twisted plaintiff's arm behind her with such force that

7   she sustained a comminuted fracture in several places), Officer Santiago is not entitled to

8   qualified immunity on summary judgment on Plaintiff's excessive force claim.

9   **VII. State Law Claims**

10          **A. Assault and Battery**

11          Incorporating the Complaint's prior allegations, Count II alleges that

12   Officer Santiago "committed the common law tort of assault and battery under Arizona

13   law when he used unreasonable and excessive force against the Plaintiff." (Doc. 1-4 at 9)

14   Defendants contend that "there is no evidence that Officer Santiago acted with malice or

15   intended to cause injury, which is a necessary element of this claim[,]" citing *Garcia v.*

16   *United States*, 826 F.2d 806 (9th Cir. 1987). (Doc. 37 at 9)

17          "To establish the tort of assault in Arizona, Plaintiff must prove that

18   [Officer Santiago] acted *with intent to cause a harmful or offensive contact* or imminent

19   apprehension thereof." *Joseph v. Dillard's, Inc*., 2009 WL 5185393 at * 16 (citing *Garcia*

20   *v. United States*, 826 F.2d 806, 809 n. 9 (9th Cir. 1987) and Restatement (Second) of

21   Torts § 21 (1965)) (emphasis added); *Al-Asadi v. City of Phoenix*, 2010 WL 3419728, * 6

22   (D.Ariz. 2010) ("A person commits [assault and battery] under Arizona law where he

23   knowingly touches another person *with the intent to injure* and either fractures a body part

24   or otherwise causes serious physical injury. A.R.S. §§ 13-1203(A), 13-1204(A)(1).")

25   (emphasis added). "Similarly, to establish the tort of battery, Plaintiff must show that

26   [Officer Santiago] 'intentionally caused a harmful or offensive contact' with Plaintiff's

27   person." *Id.* (quoting *Johnson v. Pankratz*, 196 Ariz. 621, 623, 2 P.3d 1266, 1268 (Az.Ct.

28   App. 2000) (citing Restatement (Second) of Torts § 13 (1965)). *See also*, *Howell v.*

1    *Palmer*, 2009 WL 2710091, * 3 (Az.Ct.App., Aug. 28, 2009). "Contact is offensive if it

2    'offends a reasonable sense of personal dignity.'"  *Joseph*, 2009 WL 5185393 at * 16

3    (citing Restatement (Second) of Torts § 19 (1965)). "The plaintiff must establish each of

4    the elements by a preponderance of the evidence." *Howell*, 2009 WL 2710091, * 3 (citing

5    *Aileen H. Char Life Interest v. Maricopa County*, 208 Ariz. 286, 291, 93 P.3d 486, 491

6    (Az.Ct.App. 2004)).

7            Plaintiff has produced no evidence that Officer Santiago intended to cause

8    harm or injury to Plaintiff. Even when viewing the facts and all inferences in Plaintiff's

9    favor, the Court concludes that Officer Santiago is entitled to summary judgment as a

10   matter of law on Plaintiff's assault and battery claim alleged in Count II.

11   **B. Negligence**

12           Plaintiff alleges in Count III of the Complaint that Officer Santiago

13   "committed the common law tort of negligence under Arizona law when he used

14   unreasonable and excessive force against Plaintiff." (Doc. 1-4 at 10)  Defendants argue

15   Plaintiff's negligence claim fails because Officer Santiago was justified in using force to

16   handcuff Plaintiff who was resisting arrest. (Doc. 37 at 8)  The Court disagrees for

17   purposes of summary judgment.

18           "To establish a negligence claim, a plaintiff must prove four elements: (1) a

19   duty requiring the defendant to conform to a certain standard of care; (2) the defendant's

20   failure to conform to that standard; (3) a reasonably close causal connection between the

21   defendant's conduct and the plaintiff's resulting injury; and (4) actual damages." *Las*

22   *Corrientes, L.L.C. v. The Sundt Companies, Inc.*, 2010 WL 3025520, * 2 (Az.Ct.App.,

23   Aug. 3, 2010) (citing *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983)).

24   "To survive a motion for summary judgment, a plaintiff must produce admissible

25   evidence from which a reasonable jury could find in his favor on each element." *Id.*

26   (citing *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 116-17, 180 P.3d 977, 981-82

27   (Az.Ct.App.2008).

28           "A plaintiff must prove both causation-in-fact and proximate causation." *Id.*

1 (citing *Rogers ex rel. Standley v. Retrum*, 170 Ariz. 399, 401, 825 P.2d 20, 22 (Az.Ct.

2 App. 1991)).  Under Arizona law, causation-in-fact exists when the defendant's conduct

3 contributed, even if only to a small degree, to the plaintiff's harm and the harm would not

4 have occurred but for the defendant's conduct. *Ontiveros*, 136 Ariz. at 505, 667 P.2d at

5 205. "The first element, whether a duty exists, is a matter of law for the court to decide."

6 *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (Ariz. 2007) (citing *Markowitz*

7 *v. Ariz. Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (Ariz. 1985)). "The other

8 elements, including breach and causation, are factual issues usually decided by the jury."

9 *Id.* (footnote omitted).

10         A police officer has a "duty not to inflict bodily harm or death" upon a

11 misdemeanant "in order to effect arrest." *Sonoran Desert Investigations, Inc. v. Miller*,

12 213 Ariz. 274, 281, 141 P.3d 754, 761 (Az.Ct.App. 2006) (citation omitted). Viewing the

13 evidence in the light most favorable to Plaintiff, sufficient admissible evidence has been

14 presented to create a jury issue on Plaintiff's negligence claim. Defendants' Motion in

15 this regard will be denied.

16     **C. Negligence *Per Se***

17         The Complaint alleges in Count IV that Officer Santiago "was negligent per

18 se pursuant to A.R.S. 13-3881(B)."[12] (Doc. 1-4 at 10)  Because Defendants do not provide

19 any argument or legal authority explaining why summary judgment should be granted on

20 Count IV, summary judgment on Plaintiff's negligence *per se* count[13] will be denied.

21 ───────────────

22     [12] A.R.S. § 13-3881(B) provides:

23         B. No unnecessary or unreasonable force shall be used in making an arrest, and the
24         person arrested shall not be subjected to any greater restraint than necessary for his
            detention.
25

26 A.R.S. § 13-3881(B).

27     [13] "The doctrine of negligence per se . . . is a doctrine applicable to negligence claims
   whereby a Plaintiff can show the duty and breach elements based on violation of a statute
28 that replaces the general duty of care with a particular standard. Causation and damages must

1    LRCiv 7.2(b) ("[T]he moving party shall serve and file with the motion's papers a

2    memorandum setting forth the points and authorities relied upon in support of the

3    motion.")

4              **D. Negligent Supervision and Training**

5              Count VI of the Complaint alleges the City "created an unreasonable risk of

6    harm to the Plaintiff by failing to adequately supervise, control or otherwise monitor the

7    activities of" Officer Santiago which caused Plaintiff's damages. (Doc. 1-4 at 11)  Count

8    VII claims that the City "created an unreasonable risk of harm to the Plaintiff for failing

9    to adequately train its employee Defendant John Santiago[.]" Plaintiff further alleges the

10   City was "negligent for failing to adequately train its employee regarding use of force."

11   *(Id.* at 12)

12             Defendants argue that, *inter alia*, "Plaintiff's expert has not offered an

13   opinion that Officer Santiago should have been trained in a different way, or that that

14   supervision in any manner contributed to the incident. Without evidence as to what

15   training or supervision should have been offered, Plaintiff's state law claims are similarly

16   insufficient."[14] (Doc. 37 at 8)  Plaintiff contends that "Officer Santiago initially failed to

17

18   still be proved to show liability." *Gomez v. Countrywide Bank, FSB*, 2009 WL 3617650, *
     8 (D.Nev. 2009). "'[N]egligence per se' is not a separate cause of action apart from
19   negligence, but rather it is a doctrine whereby a plaintiff can satisfy the duty and breach
     elements of a negligence cause of action as a matter of law without submitting the breach
20   issue to the fact-finder for a reasonableness finding." *Id.* at 11; *Gunnell v. Arizona Public
     Service Co.*, 202 Ariz. 388, 392, 46 P.3d 399, 403 (Ariz. 2002) ("Violation of a statutory
21   standard of care is usually held to be negligence per se.").
22

23

24

25             [14]  Because Plaintiff did not fairly state an Eighth or Fourteenth Amendment claim in
     her Complaint against the City for its alleged deliberate indifference to the public's safety
26   and the rights of others by its training and supervision of its officers' use of force, the Court
     will only address Plaintiff's state law claims of negligent supervision and training. See, doc.
27   55 regarding Plaintiff's failure to allege a *Monell* claim.
28

1   pass the OCCS training section, it is clear that the City of Mesa failed to supervise his use

2   of these holds, knowing his trouble with them and his history, and it also failed to

3   properly train him as well as other officers in the use of these hold techniques knowing

4   that they involved a greater risk of injury." (Doc. 50 at 13)  Plaintiff's Response fails to

5   cite facts either in the record or her Statement of Facts that support her claims of

6   negligent supervision and training. *See*, LRCiv 56.1(b) ("Any party opposing a motion for

7   summary judgment must . . . set forth in that paragraph and a reference to the specific

8   admissible portion of the record supporting the party's position if the fact is disputed[.]");

9   *Carmen*, 237 F.3d at 1029 ("[T]he district court need not examine the entire file for

10  evidence establishing a genuine issue of fact, where the evidence is not set forth in the

11  opposing papers with adequate references so that it could conveniently be found.").

12  Neither side cites to any state law cases for support or opposition to Defendants' Motion

13  on these state law claims.

14          To prove negligent supervision and retention, Plaintiff must show that the

15  City knew or should have known that Officer Santiago was unfit or not a competent

16  police officer and that the City's retention of, and failure to supervise, Officer Santiago

17  caused injury to Plaintiff.  *Humana Hosp. Desert Valley v. Superior Ct. (Edison)*, 742

18  P.2d 1382, 1386 (Az.Ct.App. 1987); *City of Phoenix v. Peterson*, 462 P.2d 829, 832

19  (Az.Ct.App. 1969); *Joseph*, 2009 WL 5185393 at 18 ("An employer is liable for the

20  tortious conduct of its employee if the employer was negligent or reckless in hiring,

21  supervising, or otherwise training the employee.").  "If the theory of the employee's

22  underlying tort fails, an employer cannot be negligent as a matter of law for hiring or

23  retaining the employee." *Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352

24  (Az.Ct.App. 2004)

25          The City contends that "Plaintiff has no evidence that the City inadequately

26  trained or supervised its officers." (Doc. 47 at 8) "Mere proof of a single incident of

27  errant behavior is a clearly insufficient basis for imposing liability on [a municipality]."

28  *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *City of Canton, Ohio*

1  *v. Harris*, 489 U.S. 378, 391 (1989) ("adequately trained officers occasionally make

2  mistakes; the fact that they do says little about the training program or the legal basis for

3  holding the city liable").

4           There is no evidence that Officer Santiago was unfit for his position on

5  April 26, 2008 or that the excessive force allegedly used in this case was reasonably

6  foreseeable by the City. The facts proffered by Plaintiff that as a recruit for the Mesa

7  Police Department in 2001, Officer Santiago initially did not pass the defense tactics final

8  exam, in part, due to incorrect hand placement which he later passed; was involved in a

9  police shooting[15] in 2001; and was involved in two patrol vehicle accidents do not create

10  a question of fact that the City negligently trained or supervised Officer Santiago such

11  that the City may be liable for his alleged use of excessive force in 2008. (PSOF, ¶¶ 50-

12  51, Exh C, doc. 45 at 12)  With the dearth of evidence provided on Officer Santiago's

13  training and supervision, no jury could reasonably conclude that the City negligently

14  trained and supervised Officer Santiago and such negligence ultimately caused Plaintiff's

15  injuries. Summary judgment will be granted on Plaintiff's claims of negligent supervision

16  and training. *Celotex*, 477 U.S. at 322 (stating that summary judgment is appropriate

17  against a party who "fails to make a showing sufficient to establish the existence of an

18  element essential to that party's case"); *Ward v. Mount Calvary Lutheran Church*, 178

19  Ariz. 350, 357, 873 P.2d 688, 695 (Az.Ct.App. 1994) (summary judgment was

20  appropriate when, even inferring negligent supervision in absence of facts establishing

21  such negligence, causation evidence was wholly absent).

22       **E. Punitive Damages**

23           Count VIII alleges Plaintiff is entitled to punitive damages because "the

24  aforementioned acts, omissions, and violations of the Defendants were attended by

25  wanton and willful disregard for the rights and feelings of the Plaintiff." (Doc. 1-4 at 12)

26  

27       [15]  Officer Santiago was exonerated as a result of the shooting investigation. (Officer

28  Santiago's depo, Exh C at 16, doc. 41-3 at 6)

1    Defendants argue that Plaintiff may not recover punitive damages against the City or

2    Officer Santiago acting in his official capacity, citing A.R.S. § 12-820.04, *City of*

3    *Newport v. Fact Concerts, Inc*. 453 U.S. 247 (1981); *Mitchell v. Dupnik*, 75 F.3d 517, 527

4    (9th Cir. 1996). (Doc. 37 at 9)  "To the extent Plaintiff seeks punitive damages against the

5    City, or against Defendant Santiago acting in his official capacity, such claims must be

6    dismissed." (*Id.*)  Plaintiff responds that she "is entitled to seek punitive damages under

7    Section 1983 against Officer Santiago in his individual capacity[,]" citing *Coffelt v. City*

8    *of Glendale*, 2007 WL 4200507 (D.Ariz. 2007). (Doc. 50 at 17)

9                    Plaintiff's own authority establishes that Arizona law forecloses the

10   recovery of punitive damages against the City on her state law claims and federal law

11   precludes the recovery of punitive damages against the City on her § 1983 claim.  "A.R.S.

12   § 12-820.04 is squarely in point: 'Neither a public entity nor a public employee acting

13   within the scope of his employment is liable for punitive or exemplary damages[]' [and]

14   The Supreme Court's decision in *City of Newport v. Fact Concerts, Inc*. holds that

15   municipalities are immune from such claims." *Coffelt*, 2007 WL 4200507 at 4 (footnote

16   omitted). *See also*,  *Al-Asadi*, 2010 WL 3419728, * 5-7 (discussion of municipal

17   immunity in Arizona).  Plaintiff does not attempt to distinguish the application of this

18   statute or Supreme Court decision to her punitive damages claims against the City or

19   Officer Santiago. Plaintiff, however, does contend that she is entitled to an award of

20   punitive damages on her state law claims against Officer Santiago.  Relying upon

21   *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (Ariz. 1986), Plaintiff

22   argues that "[t]he question as to whether Officer Santiago's evil mind may be inferred

23   from his conduct is one that should be left to the jury. It is quite possible that a jury could

24   find that Officer Santiago acted with an evil mind when he twisted Ms. Williams' arm

25   with such force that it snapped." (Doc. 50 at 17)  She also asserts she is entitled to seek

26   punitive damages under her § 1983 claim against Officer Santiago in his individual

27   capacity. (*Id.*)

28                    Under federal law, a jury may award punitive damages in a § 1983 case

1    alleging excessive use of force either "when a defendant's conduct was driven by evil

2    motive or intent, or when it involves a reckless or callous indifference to the

3    constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citation

4    and internal quotation marks omitted); *Smith v. Wade*, 461 U.S. 30, 33 (1983) (punitive

5    damages may be awarded "if the conduct of one or more of the defendants is shown to be

6    a reckless or callous disregard of, or indifference to, the rights or safety of others."). The

7    plaintiff alleging a § 1983 claim has the burden of proving that punitive damages should

8    be awarded by a preponderance of the evidence. *Sar Pala Ra Anan v. Kimbrell*, 2006 WL

9    548422, * 3-4 (E.D.Cal. 2006) (quoting Model Civ. Jury Instr. 9th Cir. 7.5 (2005)).[16]

10            The Court finds that on the question of Plaintiff's § 1983 claim of

11   unreasonable force during arrest, there are sufficient facts from which a reasonable jury

12   could infer that the punitive damages standard was met against Officer Santiago in his

13   individual capacity. Defendants' request for summary judgment on Plaintiff's § 1983

14   claim for punitive damages will be denied.

15            In Arizona, "[p]unitive damages are awarded only in the most egregious of

16   cases, where [a plaintiff proves by clear and convincing evidence that the defendant

17   engaged in] reprehensible conduct and acted with an evil mind." *Medasys Acquisition*

18   *Corp. v. SDMS, P.C.*, 203 Ariz. 420, 424, 55 P.3d 763, 767 (Ariz. 2002) (internal

19   quotation marks omitted) (quoting *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326,

20   331-332, 723 P.2d 675, 680-681 (Ariz. 1986)). "For that reason, punitive damages should

21   rarely be awarded. In those cases in which they are appropriate, punitive damages should

22   be available to deter egregious conduct." *Id.*

23            To obtain punitive damages in Arizona, a plaintiff must prove that

24   defendant's evil hand was guided by an evil mind. *Rawlings*, 151 Ariz. at 162, 726 P.2d

25   at 578. It is the "evil mind" that distinguishes action justifying the imposition of punitive

26

27            [16]  The current Ninth Circuit Model Civil Jury Instruction on punitive damages, 5.5,
      offers a choice of either standard - preponderance or clear and convincing. Model Civ. Jury
28   Instr. 9th Cir. 5.5 (2007).

                                      - 27 -

1   damages. *Linthicum*, 150 Ariz. 326, 331, 723 P.2d 675, 680 (Ariz. 1986). "Punitive

2   damages may not be awarded absent a showing of 'something more' than mere tortious

3   conduct." *Piper v. Bear Med. Sys., Inc*., 180 Ariz. 170, 183, 883 P.2d 407, 417 (Az.Ct.

4   App. 1993) (quoting *Linthicum*, 150 Ariz. at 330, 723 P.2d at 679). "The requisite

5   'something more,' or 'evil mind,' is established by evidence that defendant either (1)

6   'intended to injure the plaintiff . . . [or (2) ] consciously pursued a course of conduct

7   knowing that it created a substantial risk of significant harm to others.'" *Gurule v.*

8   *Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (Ariz. 1987) (quoting

9   *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578).

10          While the necessary evil mind may be inferred, it is still this evil mind in

11  addition to outwardly aggravated, outrageous, malicious, or fraudulent conduct which is

12  required for punitive damages. *Linthicum*, 150 Ariz. at 331, 723 P.2d at 680. The quality

13  of the defendant's conduct is relevant only because it provides one form of evidence from

14  which the defendant's motives may be inferred. *Gurule*, 152 Ariz. at 602, 734 P.2d at 87.

15  The more outrageous or egregious the conduct, the more compelling the inference of an

16  evil mind is. *Id*.  Nevertheless, the inquiry in every punitive damage case focuses on the

17  defendant's state of mind, which may be established by either direct or circumstantial

18  evidence. *Id.*

19          The Court has already concluded there is no evidence, direct or

20  circumstantial, that Officer Santiago intended to cause harm or injury to Plaintiff. There is

21  little, if any, evidence in the record, much less evidence of a clear and convincing nature,

22  that suggests Officer Santiago acted with an "evil mind." The Arizona Supreme Court

23  "has made it clear that a jury will not be permitted to consider an award of punitive

24  damages if the evidence supporting such an award is only slight and inconclusive." *White*

25  *v. Mitchell*, 157 Ariz. 523, 529, 759 P.2d 1327,1333 (Az.Ct.App. 1988) (quoting *Filasky*

26  *v. Preferred Risk Mutual Insurance Co.*, 152 Ariz. 591, 599, 734 P.2d 76, 84 (Ariz.

27  1987)). Because the evidence presented does not meet Arizona's high standard to warrant

28  an award of punitive damages, summary judgment on Plaintiff's claim for punitive

1    damages on Plaintiff's state law claims will be granted.

2    **VIII.  Conclusion**

3             In conclusion, Defendants' Motion for Summary Judgment is granted in

4    part and denied in part. The Court concludes that disputed questions of fact exist for jury

5    resolution on Plaintiff's  claims for alleged use of excessive force (Count I), negligence

6    (Count III), negligence *per se* (Count IV), and punitive damages on her excessive force

7    claim against Officer Santiago in his individual capacity (Count VIII). Summary

8    judgment is granted on Plaintiff's claims of assault and battery (Count II), negligent

9    supervision and training (Counts VI and VII), and punitive damages against the City,

10   Officer Santiago in his official capacity, and Plaintiff's state law claims (Count VIII).

11            Accordingly,

12            **IT IS ORDERED** that Defendants' Motion for Summary Judgement, doc.

13   37, is **GRANTED** in part and **DENIED** in part as follows:

14            1. Defendants' Motion for Summary Judgment on Plaintiff's claims of use

15   of excessive force in violation of her Fourth Amendment rights (Count I), negligence

16   (Count III), negligence *per se* (Count IV), and punitive damages on her excessive force

17   claim against Officer Santiago in his individual capacity (Count VIII) are **DENIED**.

18            2. Defendants' Motion for Summary Judgment on Plaintiff's claims of

19   assault and battery (Count II), negligent supervision and training (Counts VI and VII),

20   and punitive damages (Count VIII) against the City, Officer Santiago in his official

21   capacity, and on Plaintiff's state law claims are **GRANTED**.

22            Dated this 8th day of March, 2011.

23

24

25                                Lawrence O. Anderson
                                  United States Magistrate Judge

26

27

28